UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES LOWE, MICHAEL COLLINS, and RAE FULLER, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MONEYLION TECHNOLOGIES INC., d/b/a MONEYLION, <br><br> Defendant. | 1:25-cv-04098-DEH-SLC |

**RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendant MoneyLion Technologies Inc. respectfully submits this response to the Notice of Supplemental Authority filed by Plaintiffs on October 7, 2025, arguing that the decision in *Vickery v. Empower Finance, Inc.*, No. 25-cv-3675 (N.D. Cal. Oct. 7, 2025), supports their arguments that Instacash is "consumer credit" and that optional Turbo Fees are "finance charges" under the Military Lending Act (MLA) and Truth in Lending Act (TILA). *See* ECF No. 47. The Court should give no weight to *Vickery* for three reasons.

*First*, the court in *Vickery* misconstrued the term "credit." The court acknowledged that "credit" means "the right granted to a consumer by a creditor to . . . to incur debt and defer its payment." 15 U.S.C. § 1602(f); *see* 80 Fed. Reg. 43,560 (July 22, 2015) ("consumer credit" under the MLA" is "defined consistently with credit" under TILA). But the court incorrectly concluded that the term "debt" does not mean "a *legal* obligation to repay." Op. 8. As a matter of ordinary meaning, debt means "a state of being under obligation to pay or repay someone or something in return for something received." Debt, *Merriam-Webster Online Dictionary*. And the very dictionary that *Vickery* cites references a "*[l]iability* on a claim"—confirming that a debtor's obligation to repay is legally enforceable. Debt, *Black's Law Dictionary* (12th ed. 2024) (emphasis added). Other federal statutes define "debt" in precisely the same manner. *See*, *e.g.*, 11 U.S.C. § 101(12). The "Supreme Court has held that the plain meaning of a 'debt' or 'claim' is 'nothing more or less than an enforceable obligation.'" *In re Davis*, 194 F.3d 570, 577 (5th Cir. 1999) (quoting *Penn. Pub. Welfare Dep't v. Davenport*, 495 U.S. 552, 559 (1990)). While the *Black's Law* definition also references a "sum of money due by agreement," the word "due" means "having reached the date at which payment is *required*," Due, *Merriam-Webster Online Dictionary* (emphasis added). Thus, all relevant authorities establish that "debt" means a legal obligation to repay—and here, Instacash users have no such obligation to repay any advance.

*Second*, rather than properly analyzing the statutory text, the *Vickery* court erroneously "defer[red]" to staff commentary on Regulation Z, which the court mistakenly referred to as Regulation Z itself. Op. 8. That commentary is inapposite because it addresses products ("payday loans" and "deferred-presentment") with *irrevocable* repayment obligations. *See* MoneyLion Reply Br. 4. Earned-wage-advance (EWA) products are fundamentally different because customers are fully free to "withdraw their authorization to pay back [an] Advance." Op. 2.

*Third*, the court in *Vickery* incorrectly held that an optional "Instant Transfer Fee is a finance charge." Op. 9. In so doing, the court disregarded that the term "finance charge" includes only fees that are "*imposed* . . . by the creditor." 12 C.F.R. § 1026.4(a) (emphasis added). "Impose" means "to establish or apply by authority." Impose, *Merriam-Webster Online Dictionary*. Thus, an optional fee is not imposed by a creditor, but rather voluntarily selected by the consumer. That is why the Eleventh Circuit in *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996), held that a fee one "can choose to avoid" is "not *imposed* as an incident to [an] extension of credit." *Id.* at 579 (emphasis added). Seeking to distinguish *Veale*, the *Vickery* court attempted to divide the EWA product into two products—one with standard delivery and the other with express delivery—concluding that a fee "is a condition of Plaintiffs' receipt of instant credit." Op. 11. But the Eleventh Circuit did not adopt that view and neither should this Court, because Instacash is one product: customers receive the same amount of money in the same account, regardless of whether they pay a Turbo Fee. Just as an overnight-shipping fee for a product is not imposed on a customer by the merchant, a Turbo fee is not imposed on an Instacash user by MoneyLion. Nor is it relevant whether expedited delivery is "a material term" of EWA products. *Id.* Instead, the key question is whether MoneyLion "imposes" a Turbo Fee on a customer before they may obtain credit—and the answer is no.

Dated:  October 8, 2025

By: */s/ Ephraim McDowell*

Ephraim McDowell (*pro hac vice*)
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC  20004-2400
Tel: (202) 842-7800
emcdowell@cooley.com

James Kim (NY 3018397)
Kaitland Kennelly (NY 5211487)
Hugh Hamilton (NY 5825674)
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: (212) 479-6000
jameskim@cooley.com
kkennelly@cooley.com
hhamilton@cooley.com

*Attorneys for Defendant MoneyLion Technologies Inc.*