UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES LOWE, individually, and on behalf of all others similarly situated,<br>      Plaintiffs,<br>v.<br>MONEYLION TECHNOLOGIES INC. d/b/a MONEYLION,<br>      Defendant. | 25 Civ. 4098 (DEH)<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

  Before the Court is a Motion to Compel Arbitration or Dismiss a purported class action led by three members of the United States Military—James Lowe, Michael Collins, and Rae Fuller—against MoneyLion Technologies Inc. ("MoneyLion"). At issue here is MoneyLion's earned wage access product "Instacash," through which MoneyLion offers short-term cash advances based on expected paychecks to be repaid when the paycheck is deposited in the user's account. The Motion hinges on one question: whether, by charging a fee for allowing consumers to obtain a portion of their paycheck early so long as they preauthorize repayment once the paycheck hits their bank account, MoneyLion extends "credit" within the meaning of various consumer protection statutes. The Court joins many others across the nation in concluding that these early payday services constitute the extension of credit and therefore **DENIES** the Motion to Dismiss or Compel Arbitration.

## BACKGROUND

  The following facts are drawn from the First Amended Complaint ("FAC"), ECF No. 25, and are assumed to be true for purposes of adjudicating the Motion to Dismiss or Compel Arbitration. MoneyLion is a tech-enabled earned wage access provider. FAC ¶ 2. In what are essentially payday loans, MoneyLion allows consumers to receive short-term cash advances based

on expected future paychecks. *Id.* ¶¶ 2, 72-73. Using borrower's financial and payroll data, MoneyLion offers effectively risk-free loans to customers while pre-authorizing a debit from that customer's account on the next payday for the amount of the loan, plus any fees. *Id.* ¶¶ 117-31. It is these fees that are the subject of this litigation.

MoneyLion profits on these short-term loans through (1) charging fees for expediting payment, so-called ("Turbo delivery fees") and (2) soliciting tips for offering their services. *Id.* ¶ 76. Expedited delivery fees range between $0.49-$8.99 depending on the size of the advance, which cannot exceed $100 per advance with a maximum of five advances per pay period. *Id.* ¶¶ 77-80. And tips are exactly what they sound like: pure gifts to MoneyLion solicited through default selection screens and behavioral strategies such as "implied threats and eliciting guilt." Mem. in Opp. to Mot. for Summ. J. at 5 ("Opp."), ECF No. 33 (citing FAC ¶¶ 90-99). Approximately 90% of MoneyLion transactions use expedited delivery, and roughly 40% of customers "tip" MoneyLion when they receive an advance. FAC ¶¶ 86, 100.

Because payday loans are highly regulated, MoneyLion and other earned wage access provides structure their advances differently from a traditional loan. Particularly relevant is the fine print that states "THERE IS NO OBLIGATION TO REPAY AN INSTACASH ADVANCE." Mem. in Supp. of Mot. for Summ. J. at 6 ("Mot."), ECF No. 31. And it is true: MoneyLion technically has no recourse should a consumer choose not to repay the advance by removing their payment method from the app and cancelling the preauthorized debit—a difficult, but not impossible, process. The only punishment for doing so is being kicked off the MoneyLion app. However, 98% of customers do repay the advances, limiting any impact this provision may have on MoneyLion's bottom line. FAC ¶ 145. MoneyLion also includes a requirement that users arbitrate all claims relating to Instacash advances. Mot. at 6.

Plaintiffs each received Instacash advances while they were active-duty servicemembers. FAC ¶¶ 171-74. The Complaint estimates that the fees charged to Plaintiffs amount to annual interest rates on Instacash advances of between 280% and 1,120%. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6)[1], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing the complaint, the court "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. But the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The "FAA compels judicial enforcement of a wide range of written arbitration agreements." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) (quoting *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995)). Where a party seeks to compel arbitration, a party resisting arbitration "should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985).

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

DISCUSSION

Plaintiffs allege that MoneyLion's cash advance product—known as Instacash—is essentially an unregulated payday loan. The only legal dispute here is whether the fees attached to receiving Instacash advances—expedite fees and tips—convert these advances into extensions of credit with costs in excess of what is permitted by existing law, even in the absence of any ability to recover on MoneyLion's part. Plaintiffs allege violations of the Military Lending Act ("MLA"), Truth in Lending Act ("TILA"), Georgia Payday Lending Act ("GPLA"), and Illinois Predatory Loan Prevention Act ("IPLPA").

As discussed herein, the Court concludes that Plaintiffs have plausibly alleged that Instacash constitutes consumer credit: making it subject to various statutes and voiding any arbitration clauses in Plaintiffs' contract with MoneyLion. MoneyLion argues that Instacash is not consumer credit for two reasons: (1) because customers do not technically need to repay any advance and (2) the fees and tips associated with Instacash do not qualify as finance charges. The Court takes each argument in turn.

I.   **Military Lending Act and Truth in Lending Act**

   A.   **Statutory Background**

The MLA and TILA establish overlapping statutory frameworks that serve to protect borrowers and allow consumers to make informed decisions when taking out loans. Both laws include certain disclosure requirements, while the MLA also includes broader substantive requirements. *See, e.g.* 15 U.S.C. § 1638; 12 C.F.R. §§ 1026.17, 1026.18; 10 U.S.C. § 987(c)(1)(A); 32 C.F.R. § 232.6. In addition to disclosure requirements, the MLA makes it illegal for creditors to "impose an annual percentage rate of interest greater than 36 percent with respect to the consumer credit extended to" servicemembers and their dependents. 10 U.S.C. § 987(b). The MLA also provides that "no agreement to arbitrate any dispute involving the extension of

4

consumer credit shall be enforceable against any covered member or dependent of such a member, or any person who was a covered member or dependent of that member when the agreement was made." *Id*. § 987(f)(4).

A key term in both of these provisions is "consumer credit." Regulations promulgated by the Department of Defense define "consumer credit" as "credit offered or extended to a covered borrower primarily for personal, family, or household purposes" that is either "[s]ubject to a finance charge" or "[p]ayable by a written agreement in more than four installments." *Burrison v, FloatMe, Corp.*, No. 25 Civ. 10885, 2026 WL 444638, at *5 (D. Mass. Feb. 17, 2026). "Credit" is defined as "the right granted to a consumer by a creditor to defer payment of debt or to incur debt and defer its payment." *Id*. (citing § 232.3(h)). And a "creditor" is a person "engaged in the business of extending consumer credit" who meets the additional criteria provided in the MLA regulations. *Id*. (citing 10 U.S.C. § 987(i)(5)).

As another district court aptly summarized, a dispute involving the extension of consumer credit must include, at minimum:

(1) "credit," which is the right granted to a consumer by a creditor to

 (a) defer payment of debt or

 (b) incur debt and defer its payment;

(2) "consumer credit," meaning the "credit" is

 (a) offered to a covered borrower;

 (b) primarily for personal, family or household purposes; and

 (c) (i) payable by a written agreement in more than four installments or

   (ii) subject to a finance charge. See 10 U.S.C. § 987(i); 32 C.F.R. § 232.3(f)-(i).

(3) a "creditor," meaning a person who, with their affiliates, extended consumer credit to covered borrowers more than twenty-five times in the preceding or current

calendar year. See 10 U.S.C. § 987(i)(5); 12 C.F.R. § 1026.2(a)(17)(v); 32 C.F.R. § 232.3(i).

*Burrison*, 2026 WL 444638, at *5. MoneyLion does not dispute that it is a creditor; accordingly, the only questions are whether Instacash constitutes (1) credit that is (2) subject to a finance charge.

### B. Credit

MoneyLion first argues that Instacash advances are not "credit" based on a clever structuring of their Instacash advances. MoneyLion only offers these payday advances when it has already verified that a paycheck is incoming for the customer and the customer agrees to preauthorize a debit from their bank account for the amount received in advance, plus any fees. FAC ¶ 133. As a result, MoneyLion takes on essentially no risk for the amount of the cash advance and continually adjusts customers' eligibility to receive advances based on their default risk to ensure repayment. FAC ¶¶ 125-27. However, while a customer must agree to a preauthorized debit, it is possible for such debit to be cancelled before payday. *Id*. ¶ 73, 134. And in the relevant contractual provisions, MoneyLion waives all potential recourse for recovering outstanding advances. The only punishment they can inflict, instead, is banning that customer from using Instacash in the future. *Id*. ¶ 138. MoneyLion argues that this no-recourse structuring of their payday advances takes their product out of the realm of consumer credit.

Every other court to have addressed this issue, however, has rejected that attempt to circumvent the relevant statutory frameworks. As described above, "credit" includes where an individual "incur[s] debt and defer[s] its payment." 32 C.F.R. § 232.3(h). Here, MoneyLion offers cash advances to eligible users that, in return, must authorize automated debits from their linked external bank account on the scheduled repayment date. This Court agrees with every court to have reached the issue, and concludes that this "falls squarely within the definition of credit." *Orubo v. Activehours, Inc.*, 780 F. Supp. 3d 927, 935 (N.D. Cal. 2025) (interpreting TILA

6

definition of credit as applicable where service provided cash advances "in exchange for authorization to debit a borrower's bank account immediately after their employer deposits their paycheck on payday"); *see also Burrison*, 2026 WL 444638, at *6-7 (same); *Johnson v. Activehours, Inc.*, No. 24 Civ. 2283, 2025 WL 2299425, at *8 (D. Md. Aug. 8, 2025) (same); *Vickery v. Empower Fin., Inc.*, No. 25 Civ. 3675, 2025 WL 2841686, at *4-5 (N.D. Cal. Oct. 7, 2025) (similar), *appeal docketed*, No. 25-6377 (9th Cir. Oct. 9, 2025); *Moss v. Cleo AI Inc.*, 799 F. Supp. 3d 1152, 1158 (W.D. Wash. 2025) (concluding plaintiff plausibly alleged that service advanced "credit" under MLA and TILA).

### C. Finance Charges

The MLA does not apply to just "credit:" rather, it is limited to "consumer credit." This takes us to the second set of requirements, that credit must be of the *consumer* type, meaning the "credit" is "offered to a covered borrower, primarily for personal, family or household purposes; and (i) payable by a written agreement in more than four installments or (ii) subject to a finance charge." *See* 10 U.S.C. § 987(i); 32 C.F.R. § 232.3(f)-(i). Plaintiffs argue that MoneyLion's advances are "subject to a finance charge" through the Turbo fees and tips charged when a user takes out a loan. The Court agrees.

As the several Courts noted above have described, the MLA defines a finance charge as "the cost of consumer credit as a dollar amount," including "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a). The FAC describes in detail how Turbo Fees and Tips are part and parcel of the overwhelming majority of Instacash advances and how, for the most part, customers are unlikely to choose to use a payday advance service without an instant delivery feature, as waiting five days for payment to process would defeat the purpose of early wage access. FAC ¶¶ 84-87. "As alleged, the Court concludes that at least the expedite

7

fee plausibly represents a charge [MoneyLion] imposed on [Plaintiffs] (and other [MoneyLion] users) 'as an incident to or a condition of the extension of credit.'" *Burrison*, 2026 WL 444638, at *7 (citing 12 C.F.R. § 1026.4(a)); *Moss*, 799 F. Supp. 3d , at 1160 (concluding expedite and subscription fees were plausibly finance charges under MLA and TILA); *Orubo*, 780 F. Supp. 3d at 938 (concluding expedite fee constituted finance charge under TILA because time of receipt of funds is material term and "payment of the lightning fee is a necessary condition to the extension of credit on the terms being offered"); *Johnson*, 2025 WL 2299425, at *9 (same), Vickery, 2025 WL 2841686, at *6-7 (same).

*     *     *

Because the Court concludes that Plaintiffs adequately allege that Instacash is an extension of consumer credit, the Court concludes that Instacash is subject to the disclosure requirements of the MLA and TILA, as well as the substantive requirements of the MLA. Accordingly, the Motion to Dismiss Counts I (MLA) and II (TILA) is **DENIED**.

**II.      State Usury Laws**

    **A.      GPLA**

Georgia law prohibits "interest" exceeding 16% annually. Ga. Code. Ann. § 16-17-2(a)(1)(G). The GLPA does not define "loan," but "implicitly gives meaning to that term by its provision that it 'shall apply with respect to all transactions in which funds are advanced to be repaid at a later date.'" *Ruth v. Cherokee Funding, LLC*, 820 S.E.2d 704, 710 (Ga. 2018) (quoting O.C.G.A. § 16-17-2(b)). Under Georgia law, "whether a given transaction is a . . . loan . . . depends, not upon the form of words used in contracting, but upon the real intent and understanding of the parties." *Pope v. Marshall*, 78 Ga. 635, 4 S.E. 116, 118 (1887). As a Court recently explained in denying a similar motion to dismiss:

8

> Plaintiffs' allegations clearly show that EarnIn extends cash advances to customers with the "real intent and understanding" that those advances are to be repaid, *Pope v. Marshall*, 78 Ga. 635, 4 S.E. 116, 118 (1887), and that borrowers can only obtain advances after EarnIn takes thorough steps to ensure repayment. In fact, the circumstances under which repayment would not occur are extremely narrow—such as a borrower obtaining an advance then closing their account or changing their direct deposit instructions before payday, or managing to withdraw their paycheck on payday before EarnIn accesses it. Although the Cash Out User Agreement disavows customers' legal obligation to repay advances, that is not determinative. That the GPLA applies only to funds advanced "to be repaid at a later date" does not mean that it applies only to funds legally required to be repaid at a later date. Instead, whether funds are advanced to be repaid at a later date is determined by the shared expectations of the parties involved. "[W]hether a given transaction is a ... loan ... depends, not upon the form of words used in contracting, but upon the real intent and understanding of the parties." *Pope v. Marshall*, 78 Ga. 635, 4 S.E. 116, 118 (1887). The Georgia Supreme Court has cautioned that *934 "[i]t is easy to imagine an agreement with a sham contingent repayment provision that reflects an attempt to evade the usury laws. And a court properly presented with a claim that a contingent repayment provision is a sham should look beyond the text of the agreement to penetrate to the substance and perhaps find an unlawful loan, notwithstanding the contingency." *Ruth*, 820 S.E.2d at 710–11.

*Orubo*, 780 F. Supp. 3d at 933-34.

The Court concludes that Plaintiffs adequately pleaded a violation of Georgia law. Plaintiffs allege that the cash advances are effectively short-term loans given the obligation to establish a pre-authorized debit on a user's bank account and the almost impossibility that the debt would not be repaid. The Court also finds MoneyLion's argument that the associated finance charges do not constitute interest unpersuasive under the broad definition of "interest" in Georgia statute. O.C.G.A. § 7-4-2 (defining "interest" as "a charge for the use of money computed over the term of the contract at the rate stated in the contract or precomputed at a stated rate on the scheduled principal balance *or* computed in *any other way or any other form*.") (emphasis added). The motion to dismiss Count III is **DENIED**.

B.   Illinois PLPA

Plaintiffs have also plausibly alleged a violation of the Illinois PLPA. The parties agree that the IPLPA emulates the MLA, seeking to codify the same federal regulations for a broader

9

class of individuals than just service members. The IPLPA defines "loan" broadly as "money or credit provided to a consumer in exchange for the consumer's agreement to a certain set of terms, including, but not limited to, any finance charges, interest, or other conditions." 815 ILCS 123/15-1-10. MoneyLion concedes that, at minimum, the MLA's definition of credit applies to the IPLPA. Mot. at 25-26. Because the Court has already concluded that Instacash is consumer credit under the MLA, the motion is **DENIED** with respect to Count IV.

III.   **Arbitration**

In light of the Court's determination that Instacash is an extension of consumer credit, the Court concludes that the arbitration clause is unenforceable. Indeed, MoneyLion concedes that this conclusion is inevitable if, as the Court held above, the Plaintiffs have adequately alleged that the MLA applies here. Mot. at 30 ("[T]he Arbitration Agreement expressly carves out anyone who is a 'Covered Borrower' under the MLA Rule, so if the Court concludes the MLA applies here, the Arbitration Agreement will not apply."). The Court also independently concludes that the MLA's explicit prohibition on submitting consumer credit agreements to arbitration applies to this case. *Burrison*, 2026 WL 444638, at *4-5 (concluding MLA voids arbitration clause for extensions of consumer credit); *Consumer Fin. Prot. Bureau v. MoneyLion Techs. Inc.*, 799 F. Supp. 3d 152, 189 (S.D.N.Y 2025) (explaining that "[r]egardless of what [s]ection 987(e)(3) prohibits, [s]ection 987(f)(4) independently renders all arbitration agreements unenforceable as against military borrowers"); *Revell v. Grant Money, LLC*, 808 F. Supp. 3d 1036, 1048 (N.D. Cal. 2025) (reaching same conclusion). Accordingly, the Motion to Compel Arbitration is **DENIED**.

## CONCLUSION

Based on the above, Defendant's Motion to Compel Arbitration or Dismiss is **DENIED.** Within fourteen (14) days of the date of this Order, the parties shall file: (1) a status letter indicating whether they seek referral for (a) a settlement conference before a Magistrate Judge or (b)

10

participation in the District's Mediation Program; and (2) a proposed Civil Case Management Plan and Scheduling Order.  The parties shall use this Court's form Proposed Civil Case Management Plan and Scheduling Order, which is also available at: https://nysd.uscourts.gov/hon-dale-e-ho.

The Clerk of Court is respectfully directed to terminate ECF No. 30.

SO ORDERED.

Dated: March 6, 2026

New York, New York

                                              DALE E. HO
                                     United States District Judge